IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHIGOZIE M. ENOCH,
   *Plaintiff*,

v.                                      Civil Action No. ELH-11-3551

BECTON, DICKINSON & CO.,
   *Defendant*.

**MEMORANDUM OPINION**

Chigozie M. Enoch, the self-represented plaintiff, sued his former employer, Becton, Dickinson and Company ("BD"), defendant, alleging unlawful employment discrimination on the basis of race and national origin, in violation of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. §§ 2000e *et seq.*, and on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* At issue here is the "Motion to Partially Dismiss Plaintiff's Complaint" ("Motion" or "Corrected Motion") (ECF 7), filed by defendant pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that some of plaintiff's claims are deficient as a matter of law.[1]

Specifically, defendant attacks three categories of allegations brought by plaintiff.[2] First, defendant argues that some of plaintiff's claims are time-barred, because they are based on alleged discriminatory acts that occurred more than 300 days before plaintiff filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC").

---

[1] Defendant previously filed a "Motion to Partially Dismiss Plaintiff's Complaint" ("Original Motion") (ECF 5), and then filed the Corrected Motion (ECF 7). In light of the filing of the Corrected Motion, I will deny the Original Motion as moot.

[2] Plaintiff's complaint was filed on a form "Complaint for Employment Discrimination" made available to self-represented litigants by the court, and is not divided into separate counts.

Second, defendant contends that some of plaintiff's claims must be dismissed for failure to exhaust administrative remedies, because plaintiff did not include them in his charge of discrimination filed with the EEOC. Finally, defendant maintains that, to the extent that plaintiff's discrimination claims are based on his placement on a performance improvement plan, they must be dismissed because, as a matter of law, placement on a performance improvement plan is not an actionable adverse employment action.

Plaintiff filed a "Response to Defendant's Motion to Patially [sic] Dismiss Some Charges" ("Response") (ECF 9), and defendant filed a Reply (ECF 11).[3]  No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. The Motion will be granted in part, and denied in part, for the reasons that follow.

## Background[4]

Mr. Enoch, who is black, is a native of Nigeria. Complaint ¶ 6. Born in 1955, he was 54 years of age at the time his employment with BD was terminated in 2009. *See id.*; *see also* ECF 9-3 at 1.

BD hired Mr. Enoch in 1995 as an Associate Scientist. *Id.* That position entailed "purify[ing] antibodies." *Id.* Twelve years later, in October 2007, Mr. Enoch's fellow Associate

---

[3] After defendant filed its Reply, plaintiff filed another document captioned as his "[R]esponse to BD's Corrected Motion to partial [sic] Dismiss some Charges" (ECF 11). Defendant moved to strike ECF 11, *see* ECF 12, contending that ECF 11 is a surreply, filed without leave of court in violation of Local Rule 105.2(a). Plaintiff has not responded to the motion to strike. To be sure, ECF 11 is expressly captioned as a response to the Corrected Motion, and not a surreply or a response to defendant's Reply. If ECF 11 is a response to the Corrected Motion, it is untimely. The Corrected Motion was filed on January 11, 2012, and ECF 11 was not filed until February 24, 2012; under Local Rule 105.2(a) a response is due 14 days after the motion to which it responds (that time is ordinarily extended by a further three days by operation of Fed. R. Civ. P. 6(d)). Nevertheless, in light of plaintiff's self-represented status, I will deny defendant's motion to strike. Therefore, I have considered the content of ECF 11.

[4] Unless otherwise noted, the facts in this section are drawn from plaintiff's complaint.

Scientists, who performed the "same work," were promoted to Scientist.  *Id.*  Mr. Enoch, however, was "demoted" to the position of Manufacturing Technologist.  *Id.*

Over a year later, in December 2008, BD advised Mr. Enoch that his position was one of several that would be eliminated by September 2009.  *Id.*  Other co-workers whose positions were eliminated were given severance packages.  *Id.*  Mr. Enoch was not offered a severance package, but was advised to apply for another open position with BD.  *Id.*  Mr. Enoch's supervisors also instructed him to train a co-worker, Thomas Simmons, who is white, to "perform [Mr. Enoch's] duties."  *Id.*

Mr. Enoch applied for the position of Senior Quality Technical Associate in BD's Raw Material Testing Department, and was transferred to that position as of March 30, 2009.  *Id.*  The new position entailed a reduced salary from his prior position as a Manufacturing Technologist.  *Id.*  Mr. Enoch was the only "black male . . . from Nigeria" in the Raw Materials Testing Department.  *Id.*  After having been employed with BD for fourteen years with good performance reviews, Mr. Enoch began to receive poor performance reviews upon his transfer to the Raw Materials Testing Department.  *Id.*  On July 15, 2009, Mr. Enoch's supervisor, Carol Jackson, placed him on a "30 day Developmental Plan."  *Id.*  However, on August 12, 2009, before the end of the 30-day period under the plan, Mr. Enoch was fired.  *Id.* (in separate page titled "Continuation of Facts").

Thereafter, Mr. Enoch initiated an administrative proceeding with the EEOC and the Maryland Commission on Human Rights ("MCHR").  Complaint ¶ 9.  The operative date on which plaintiff initiated the proceeding with the EEOC and MCHR is a matter of some dispute. In his complaint, Mr. Enoch alleges that he "filed charges" with the MCHR and the EEOC in

"August 2009." *Id.* Along with the Motion, however, defendant has submitted a copy of a "Charge of Discrimination" signed by plaintiff on October 31, 2009, and stamped "received" by the EEOC's Baltimore Field Office on November 3, 2009. *See* ECF 7-2. Therefore, defendant argues that November 3, 2009, is the operative date on which a "charge" was filed with the EEOC, within the meaning of the limitations provisions of Title VII and the ADEA. But, with his Response, plaintiff submitted an EEOC "Intake Questionnaire" signed by Mr. Enoch on August 21, 2009. *See* ECF 9-3.

In any event, plaintiff received a "Dismissal and Notice of Rights" (also known as a "right-to-sue letter") from the EEOC on or about September 20, 2011. *Id.* ¶ 10. He filed suit in this Court 83 days later, on December 12, 2011.

Additional facts will be presented in the discussion.

## Discussion

### A. Standard of Review

A defendant may "'test the sufficiency of a complaint'" by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 182 L. Ed. 2d 772 (2012).

In undertaking this inquiry, a court considers "the complaint in its entirety, as well as documents attached or incorporated into the complaint" or that are "'integral to and explicitly relied on in the complaint' [where] there [is] no authenticity challenge." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

Ordinarily, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are permissible subjects of consideration under

Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).[5]

## B. Timeliness

Both Title VII and the ADEA require a plaintiff to file a "charge" of discrimination with the EEOC or an appropriate state or local agency within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) (Title VII); *see also* 29 U.S.C. § 626(d)(1) (ADEA provision requiring filing of "charge" with EEOC within specified time "after the alleged unlawful practice occurred"). This time-limited requirement to file an administrative charge is "akin to a statute of limitations." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 n.5 (4th Cir. 2005) (describing Title VII's time limit to file EEOC charge as "'like a statute of

---

[5] Rule 12(d) of the Federal Rules of Civil Procedure presents an exception to the bar against consideration of material outside the pleadings, and allows a court, in its discretion, to consider such matter presented with a motion under Rule 12(b)(6). However, if the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Nevertheless, a court may consider documents that are "'integral to and explicitly relied on in the complaint,'" without converting the Motion to one for summary judgment. *E.I. du Pont*, 637 F.3d at 448 (quoting *Phillips*, 190 F.3d at 618).

My ruling does not rely on matter outside the pleadings, except to the extent permitted under Rule 12(b)(6) as to documents that are attached or integral to the complaint. Although the Charge of Discrimination was not submitted with plaintiff's complaint, it can be considered without conversion to summary judgment. *See White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (ruling that defendant's attachment of EEOC charge did not convert its motion to dismiss to a motion for summary judgment where Plaintiff did not attach the EEOC charge to his complaint, but incorporated it by reference). By the same token, plaintiff alleged in his complaint that he filed a charge with the EEOC in "August 2009." It is apparent that this allegation referred to the Intake Questionnaire. Thus, the Intake Questionnaire is, like the Charge of Discrimination, a document integral to the complaint that is an appropriate subject of Rule 12(b)(6) consideration. To the extent that the parties have presented other documents not attached or integral to the complaint, as I will explain, those documents do not alter my ruling. Therefore, I have not converted the Motion to one for summary judgment under Rule 12(d).

limitations'") (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *Hamilton v. 1st Source Bank*, 928 F.2d 86, 86 (4th Cir. 1990) (describing ADEA's time limit to file EEOC charge as a "statute of limitations").

The time allotted to file a charge under both Title VII and the ADEA depends on whether the plaintiff files the charge in a state (or, under Title VII, a local jurisdiction) that has a law prohibiting employment discrimination on the same bases that are covered by the federal statutes and authorizing a state or local agency to grant or seek relief from such discrimination. Such a state or local jurisdiction is sometimes called a "deferral" jurisdiction. *See, e.g.*, *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011). In a deferral jurisdiction, the limitations period is 300 days; otherwise, the period is 180 days. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(1), 633(b); *see also Prelich*, 813 F. Supp. 2d at 661-62. Maryland is a deferral state under both Title VII and the ADEA; the MCHR is the applicable state enforcement agency. *EEOC v. Randstad*, 765 F. Supp. 2d 734, 739 & n.1 (D. Md. 2011).

Therefore, under both Title VII and the ADEA, plaintiff was required to file a charge with the EEOC or the MCHR within 300 days after the alleged unlawful employment discrimination took place. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that a plaintiff cannot recover for "for discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.* at 105, even if the discrete act is "related to acts alleged in timely filed charges." *Id.* at 113. In other words: "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* A "discrete act" or "incident of discrimination" includes such actions as "termination, failure to

promote, denial of transfer, or refusal to hire." *Id.* at 114.[6]  *Accord Gilliam v. S.C. Dept. of Juvenile Justice*, 474 F.3d 134, 140-41 & n.8 (4th Cir. 2007).

Defendant argues that plaintiff's claims are barred as to any alleged discrete act of discrimination that occurred more than 300 days before the date his charge was filed with the EEOC.  Motion at 6.  Calculating the 300-day period from November 3, 2009, *i.e.*, the date that the Charge of Discrimination was stamped "received" by the EEOC's Baltimore Field Office, defendant argues that any claims arising from acts that occurred before January 7, 2009, are time-barred.  *Id.*  Thus, in defendant's view, plaintiff cannot proceed on his claim that he was demoted to Manufacturing Technologist in October 2007 or that he was denied a severance package in December 2008.  *Id.*

As noted, plaintiff submitted his EEOC Intake Questionnaire, dated August 21, 2009.  On the signature page, it states: "Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge."  ECF 9-3 at 6.  Relying on the Supreme Court's recent decision in *Lewis v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 2191 (2010), plaintiff also argues that, to the extent defendant engaged in discriminatory acts within the limitations period, he can challenge the decisions that led to those acts, even if the

---

[6] The *Morgan* Court articulated a different rule for "hostile environment claims."  In such a case, the "'unlawful employment practice' . . . cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative effect of individual acts."  *Morgan*, 536 U.S. at 115 (internal citations omitted).  Therefore, in a hostile environment claim, when the "employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring," and, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.  Plaintiff has not asserted a hostile environment claim in this case.

decisions were made outside the limitations period. In essence, plaintiff contends that all of defendant's discriminatory acts were part and parcel of a "[p]olicy to promote white associates more frequently than others," and thus none of his claims are time-barred. ECF 11 at 7.

Plaintiff's reliance on *Lewis* is misplaced. *Lewis* involved Title VII claims of disparate impact, rather than claims of disparate treatment. Under the relevant provision of Title VII, "a plaintiff establishes a prima facie disparate-impact claim by showing that the employer '*uses* a particular employment practice that causes a disparate impact' on one of the prohibited bases." *Lewis*, 130 S. Ct. at 2197 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)) (emphasis in *Lewis*). With respect to an employment practice that has an alleged disparate impact, *Lewis* stands for the proposition that, even if a defendant's decision to adopt the practice would "give rise to a freestanding disparate-impact claim," a new actionable violation of Title VII occurs when the defendant "implement[s] that decision down the road"; or, in the words of the statute, when the defendant "'use[s]' the 'practice' that 'causes a disparate impact.'" *Lewis*, 130 S. Ct. at 2199 (quoting statute). Thus, where the defendant applies an employment practice during the limitations period, the plaintiff's claim challenging that action is not time-barred, even if the defendant made the decision to adopt the practice outside the limitations period. *Id.* at 2195.

This is not a disparate impact case. The "policy" that plaintiff alleges is not a policy that had a disparate impact, perhaps inadvertently, along racial lines. Rather, plaintiff alleges a "policy" of intentional discrimination in favor of "white associates." That constitutes a claim of intentional disparate treatment, not disparate impact. In order to prevail on a disparate treatment claim, "the plaintiff must demonstrate deliberate discrimination within the limitations period." *Lewis*, 130 S. Ct. at 2199. Therefore, to the extent that plaintiff seeks to recover for discrete acts

of alleged discrimination, including a demotion or denial of a severance package, *Morgan* teaches that those discrete acts must have occurred during the limitations period.[7]

Nevertheless, defendant is mistaken in contending that plaintiff did not file a "charge" of discrimination, within the meaning of Title VII and the ADEA, until October 31, 2009. Notably, although both Title VII and the ADEA require a plaintiff to file a "charge," neither statute defines the term "charge." *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *see also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002) (stating that Title VII does not define "charge"). EEOC regulations and Supreme Court precedent endorsing those regulations confirm that, in appropriate circumstances, an intake questionnaire such as the one completed by Mr. Enoch in August 2009 may serve as a "charge" for the purpose of establishing the limitations period. *See Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008); 29 C.F.R. §§ 1601.9, 1601.12, 1626.3, 1626.6, 1626.8.[8]

In *Holowecki*, a case arising under the ADEA, the Supreme Court held that an EEOC intake questionnaire will be deemed a charge if it contains "the information required by the [EEOC's] regulations, *i.e.*, an allegation [of discriminatory conduct] and the name of the charged party," and can be "reasonably construed as a request for the agency to take remedial action to

---

[7] To be sure, *Morgan* also makes clear that, although a plaintiff may not recover for discrete acts of discrimination outside the limitations period, the statutes do not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

[8] Counsel for defendant did not bring *Holowecki*, the EEOC regulations, and other applicable case law to the Court's attention. In *White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576 (D. Md. 2007), which defendant cites for the proposition that the Court can consider a charge of discrimination in the context of a Rule 12(b)(6) motion, Judge Alexander Williams, Jr. presaged the Supreme Court's ruling in *Holowecki,* concluding that an EEOC intake questionnaire could serve as a "charge" for limitations purposes under both Title VII and the ADEA. *See id.* at 579-83.

protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402.

The EEOC's regulations specify the content of a charge. The EEOC has promulgated separate regulations applicable to Title VII and the ADEA, but the regulations under the two statutes are consistent. Although the regulations specify that a charge "should contain" several items of information, including a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," the regulations state that a "charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(a), (a)(3), (b) (regulation applicable to Title VII); *see also* 29 C.F.R. § 1626.8 (regulation applicable to the ADEA, stating the same contents as in § 1601.12(a) that a charge "should contain," but stating that "a charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing that conforms to the requirements of [29 C.F.R.] § 1626.6); 29 C.F.R. § 1626.6 ("A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s).")

Plaintiff's Intake Questionnaire fully satisfies the EEOC regulations and *Holowecki*. It identified Mr. Enoch and provided his contact information and other personal information. *See* ECF 9-3 at 1. It also identified and provided contact information for BD, and identified Mr. Enoch's supervisors, including the individuals responsible for the alleged acts of discrimination. *See id.* at 1-2. In the Intake Questionnaire, Mr. Enoch also included the following allegations: (1) on March 30, 2009, Mr. Enoch's "job was replaced by a white man, and [Enoch] was

terminated"; (2) Enoch "was asked to look for another job" and "Thomas Simmons replaced" Enoch; and (3) BD "said [Enoch's] job will be eliminated September 2010.  But it is not true because they replaced me with a white man called Thomas Simmons."  *Id.* at 3-4.  These averments are sufficient to comply with the EEOC's regulatory requirements that a charge "be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s)."  29 C.F.R. § 1626.6; *see also* 29 C.F.R. § 1601.12(b).[9]

The Supreme Court articulated an additional requirement in *Holowecki*: that a charge must be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402.  Mr. Enoch's Intake Questionnaire satisfies this requirement as well.  The Intake Questionnaire contains two alternate boxes for the petitioner to select.  With respect to the two boxes, the questionnaire form provided the following instructions, ECF 9-3 at 5 (italics added, boldface in original):

> Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so within either 180 or 300 days from

---

[9] In the portion of the Intake Questionnaire labeled "Describe any other actions you believe were discriminatory," Mr. Enoch wrote "please see attached."  ECF 9-3 at 3.  The version of the Intake Questionnaire that Mr. Enoch submitted in this suit as an exhibit to his Response contains an attachment that further describes, in narrative form, Mr. Enoch's allegations of discrimination.  *See* ECF 9-3 at 7-8.  Whether this narrative is actually the attachment that was submitted with the Intake Questionnaire is unclear, however.  The copy of the narrative submitted with Mr. Enoch's Response contains a footer indicating that it was printed from a Yahoo.com email account in June 2010, and contains a fax header indicating that it was transmitted by fax in September 2011.  Obviously, both dates are after the date in August 2009 that the Intake Questionnaire was allegedly submitted, and so the attachment cannot be the exact version that was submitted to the EEOC with the Intake Questionnaire (although perhaps it is a later printout of the exact same content).  I need not consider the content of the attachment, however, because the matter contained in the Intake Questionnaire itself is sufficient to qualify it as a "charge" for purposes of the statute of limitations.

the day you knew about the discrimination. The amount of time you have depends on whether the employer is located in a place where a state or local government agency has laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** *If you want to file a charge, you should check Box 1, below*. **If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC's notifying the employer, union, or employment agency about your filing a charge, you may wish to check Box 2, below.**

Mr. Enoch checked "Box 1," which states, *id.* (italics added; boldface in original):

*I want to file a charge of discrimination*, and I authorize the EEOC to look into the discrimination I described above. **I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, or retaliation for opposing discrimination.

He did not check "Box 2," which states, *id.* (emphasis added):

I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. *I understand that by checking this box, I have not filed a charge with the EEOC.* I also understand that I could lose my rights if I do not file a charge in time.

It is abundantly clear from the content of the Intake Questionnaire that, by checking "Box 1," Mr. Enoch intended the questionnaire to be treated as a charge, and that the EEOC also regarded as a charge a questionnaire on which "Box 1" was checked. Therefore, under *Holowecki*, for limitations purposes, plaintiff filed his charge on August 21, 2009.[10]

---

[10] It is of no moment that Mr. Enoch later filed another document formally labeled as a "Charge of Discrimination" (*i.e.*, ECF 7-2). In *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), a precursor to *Holowecki*, the Supreme Court upheld, as an "unassailable interpretation" of Title VII's charge requirements, *id.* at 118, the EEOC's regulatory "relation-back" provisions, which dictate that a petitioner may supplement or amend a charge after it is filed, and that those supplements or amendments will relate back to the date the charge was originally filed. *See* 29 C.F.R. § 1601.12(b) (Title VII regulation); *see also* 29 C.F.R. § 1626.8(c) (complementary ADEA regulation). In *Edelman*, the Court held that a subsequent "Charge of Discrimination" (submitted using the same EEOC form used by Mr. Enoch) did not necessarily constitute the

It follows that Mr. Enoch's claims are timely to the extent that they concern discrete acts of discrimination that took place within 300 days before August 21, 2009. In other words, claims regarding acts that occurred on or after October 25, 2008, are not time barred. This includes Mr. Enoch's allegations as to discriminatory acts in December 2008, *i.e.*, BD's refusal to offer him a severance package and BD's instructions to Mr. Enoch to train his white co-worker, Mr. Simmons, to perform his job. Nevertheless, it is clear that Mr. Enoch's alleged "demotion" from the position of Associate Scientist to Manufacturing Technologist, in October 2007, is outside the limitations period and cannot form the basis of a claim.[11]

Therefore, as to defendant's limitations defense, I will grant the Motion in part and deny it in part. Plaintiff's claims as to any discriminatory acts occurring before October 25, 2008, will be dismissed, but claims as to alleged acts occurring after that date, including acts occurring before January 7, 2009, remain pending.

### C. Exhaustion

Defendant's second contention also relates to plaintiff's EEOC charge. BD argues that Mr. Enoch failed to include any allegation of discrimination on the basis of age in his EEOC charge. Because filing a charge of discrimination with the EEOC is a condition precedent to maintaining a cause of action under the ADEA, defendant maintains that plaintiff's ADEA claims must be dismissed for failure to exhaust administrative remedies.

---

"charge" for limitations purposes, because the "Charge of Discrimination" could relate back to a previous, unsworn letter sent to the EEOC by the plaintiff, if the unsworn letter constituted the plaintiff's charge. *See Edelman*, 535 U.S. at 112-118. The *Edelman* Court remanded for a determination of whether the unsworn letter constituted a charge. *Id.* at 119. Later, in *Holowecki*, the Court established the criteria to determine whether a submission is a charge.

[11] Under *Morgan*, 536 U.S. at 113, the parties are not precluded from introducing evidence concerning the alleged demotion to the extent that it is relevant to the allegations of discriminatory acts within the limitations period.

In response, plaintiff relies on his Intake Questionnaire (ECF 9-3) and on another document (ECF 9-1), which is a letter dated September 28, 2009, from Mr. Enoch to an EEOC investigator. In the letter, Mr. Enoch stated: "I am writing to add more information on discriminations [to which] I was subjected at Becton Dickinson and [C]ompany because of my color, race and national origin." ECF 9-1 at 2. Plaintiff argues that, in the Intake Questionnaire and the letter of September 28, 2009, he "complained of not being promoted, . . . mentioned [his] age [of] 54, and complained about [his] benefits and pension [being] taken away." Response at 4. In plaintiff's view, these allegations are sufficient to invoke a claim of age discrimination in the EEOC charge.

A "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim," and the "same is true of claims made under the ADEA." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009).[12] And, "[t]he scope of the plaintiff's right to file a federal lawsuit is determined by the . . . contents" of the charges filed by the plaintiff with the EEOC or a corresponding state

---

[12] Although some recent decisions in the Fourth Circuit, such as *Jones*, have described the administrative exhaustion requirement as "jurisdictional," Fourth Circuit precedent is not entirely consistent on this point. *See, e.g.*, *Zografov v. V.A. Med. Ctr.*, 779 F.2d 967 (4th Cir. 1985) (stating, in federal employee's Title VII suit, that "failure to exhaust administrative remedies is not a jurisdictional bar for federal employees seeking relief under Title VII"); *accord Young v. Nat'l Ctr. for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1987); *cf. Jones v. Bock*, 549 U.S. 199, 212 (2007) ("[T]he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense.").

Regardless of whether filing a charge of discrimination with the EEOC (or a state enforcement agency) is a jurisdictional requirement, however, it is not a jurisdictional requirement that the charge be *timely* filed. Rather, the timeliness provisions (discussed, *supra*) in Title VII, the ADEA, and other federal anti-discrimination statutes are treated as statutes of limitations, which must be raised by the defendant as an affirmative defense and are subject to exceptions such as waiver, equitable tolling, and equitable estoppel. *See Zipes v. Trans World Airlines, Inc.*, *supra*, 455 U.S. 385, 393 (1982); *Jones*, 551 F.3d at 300 & n.2; *Prelich*, *supra*, 813 F. Supp. 2d at 662-63.

agency during the process of exhaustion. *Id.* at 300 (citation omitted). Put another way, "'[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit.'" *Id.* (citation omitted).

Notably, an EEOC charge "'does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). It follows that the scope of the lawsuit may be broader than the language of the EEOC charge; "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000). Courts liberally construe EEOC charges because they often are not completed by lawyers. *See Chacko v. Patuxent Inst.*, *supra*, 429 F.3d 505, 509 (4th Cir. 2005).

Despite the liberal construction afforded to EEOC charges, I cannot conclude that the documents plaintiff submitted to the EEOC were sufficient to raise a claim of age discrimination, or that an age discrimination claim would be within the "scope of the administrative investigation that [could] reasonably be expected to follow" from plaintiff's administrative allegations. *Bryant*, 288 F.3d at 132. In the Intake Questionnaire, plaintiff asserted that he was "replaced by a white man" but did not assert a claim of age discrimination, or allege the age of Mr. Simmons, the person who allegedly replaced him. ECF 9-3 at 3. In the section of the questionnaire containing checkboxes for the bases for the plaintiff's claim of discrimination, Mr.

Enoch checked the boxes for "Race," "National Origin," and "Disability,"[13] but did not check the box marked "Age."  *Id.*  Even if I were to consider the narrative attachment to the Intake Questionnaire, *see* note 11, *supra*, that document contained no allegation of age discrimination. Rather, it asserted "intentional discrimination because of [Mr. Enoch's] race and country of origin."  ECF 9-3 at 8.

Similarly, in Mr. Enoch's letter of September 28, 2009, to an EEOC investigator, he did not assert age discrimination.  Instead, he claimed he was subjected to discrimination "because of [his] color, race and national origin."  ECF 9-1 at 2.[14]  In his formal Charge of Discrimination (ECF 7-2), Mr. Enoch again checked only boxes asserting discrimination on the basis of race and national origin, and did not check the box for age discrimination.  The "particulars" of the charge contain no mention of age.  Rather, Mr. Enoch asserted: "I believe I was discriminated against because of my race, Black and national origin, Nigerian . . . ."  ECF 7-2 at 2.

To be sure, in several of these documents, Mr. Enoch provided his age or his year of birth, but these disclosures came in the context of providing general biographical and contact information.  Mr. Enoch never expressly connected his age to his allegations of discrimination, or mentioned facts that might cause an investigator to infer the possibility of age discrimination (such as noting the ages of his co-workers or his supervisors).  It is also clear that Mr. Enoch's allegations of injury include his lack of promotion over his long tenure at BD and his loss of pension and other retirement benefits upon his termination.  Although these injuries have some tangential connection to longevity, the mere fact that an employee is over the age of 40 (so as to

---

[13] It is unclear why Mr. Enoch checked the box marked "Disability."  He has not asserted any disability discrimination claim in this lawsuit.

[14] Because the letter of September 28, 2009, does not support plaintiff's position on the merits, it is unnecessary to resolve whether it is a proper subject of Rule 12(b)(6) consideration.

come within the protections of the ADEA, *see* 29 U.S.C. § 631(a)), is discharged after a lengthy period of employment, or asserts a denial of retirement benefits, does not make out a claim of discrimination on the basis of age.

On the record before me, the first time that Mr. Enoch alleged age discrimination in the administrative proceedings was in an email to an EEOC investigator dated September 19, 2011, the day before the EEOC sent Mr. Enoch a right-to-sue letter. *See* ECF 11-2. Mr. Enoch's email was a response to a communication from the investigator, advising him that a "no probable cause" determination by the EEOC was likely. Mr. Enoch provided a numbered list of eighteen matters he believed the EEOC would have "found" if it "had investigated this case." ECF 11-2 at 2. As item #12 of his list, Mr. Enoch stated: "They hired a younger associate to replace me (Age discrimination)." *Id.*

Assuming, for the sake of argument, that this email is a proper subject of consideration under Rule 12(b)(6), it does not satisfy the exhaustion requirement. The purpose of the exhaustion requirement is to "ensure[] that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491. If the exhaustion requirement could be satisfied by an eleventh-hour, passing mention of age discrimination, made in an email the day before the conclusion of EEOC proceedings, the notice purposes served by the exhaustion requirement would be entirely eviscerated.

Accordingly, I will grant defendant's Motion with respect to plaintiff's ADEA claims; those claims will be dismissed for failure to exhaust administrative remedies.

### D. Adverse Employment Action

Finally, defendant argues that plaintiff's claims should be dismissed to the extent that they arise from the alleged "30 day Development Plan" on which he was placed immediately before his termination. Defendant argues that placement on a performance improvement plan does not constitute an adverse employment action upon which a claim of employment discrimination can be based.

The Fourth Circuit has explained that "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks, citation, and alterations omitted). "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citation omitted). A mere "poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.' An evaluation merely causing a loss of prestige or status is not actionable." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir.) (internal citations omitted), *cert. denied*, 543 U.S. 959 (2004).

I agree with defendant that, standing alone, plaintiff's placement on a performance improvement plan cannot support a discrimination claim. However, the placement on the performance improvement plan occurred in close temporal proximity to plaintiff's termination. Indeed, plaintiff alleges he was terminated before the conclusion of the thirty-day period of the

performance improvement plan.  Thus, although placement on the performance improvement plan is not "a redressable adverse employment action" in itself, *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003), the placement on the improvement plan appears factually bound together with plaintiff's claim regarding his termination.  Moreover, placement on the improvement plan may be "actionable" if "the employer subsequently use[d] the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *James*, 368 F.3d at 377 (internal citation and quotation marks omitted).  Accordingly, I will deny defendant's Motion in this regard.

## Conclusion

For the foregoing reasons, I will deny defendant's Original Motion as moot, will deny defendant's motion to strike ECF 11, and will grant defendant's Corrected Motion in part and deny it in part.  Plaintiff's ADEA claims will be dismissed, and his claims as to events that occurred before October 25, 2008 will also be dismissed.  In all other respects, defendant's Motion will be denied, and plaintiff's claims will proceed to discovery.[15]  An appropriate Order follows.

Date:   June 22, 2012                                /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge

---

[15] I echo Judge Williams's comment to the self-represented plaintiff in *White*, *supra*, 528 F. Supp. 2d at 583 n.9:

> The Court strongly admonishes Plaintiff of the difficulty in pursuing this case without counsel and urges [plaintiff] to retain counsel as soon as possible so that [he] can adequately articulate [his] claims and litigate [his] case.  Otherwise, Plaintiff may face challenging discovery requirements and may have difficulty meeting [his] burden in a potential summary judgment motion.